Our second case for this morning is Yahnke v. County of Kane, Illinois, 15-2162, Mr. Delaney. May it please the court. Thank you, Your Honor. My name is William Delaney. I'm here on behalf of Stephen Yahnke who's present with us here today. Judge, we have three important issues before the court. This is a wrongful termination case based on engaging in a protective activity, seeking elected office. We have that issue before us where there was a manifest error in the court's ruling where it misread the law. The standard before the court is outlined in Carter v. Chicago State University on this political patronage issue, and there's three different paths by which the plaintiff survives a summary judgment motion. Could I ask before you get too wound up with this, how directly or how clearly was the statement of undersheriff Zeman that's in the deposition where he said where Zeman says that Perez says, I'm not giving Yahnke any time off. I'm firing him. He thinks he's going to run for sheriff against me someday. The district court doesn't mention that in the opinion, and I want to know whether that's because it wasn't clearly raised to the district court's attention or why. It was absolutely raised. It's manifest throughout the record. It's one of the basis of the underlying pleading as well. So she's given that page in that deposition, pin site, the whole thing. Absolutely. And that direct evidence is a second error in the district court's ruling because this takes us back to the Carter three paths to survive. But is there any evidence in the record that tells us the timing of that That conversation predated all of the OPS investigations that the alleged purported absolute honesty issue is built upon. What we have here, your honors is a clear case of papering the record. This conversation, I'm going to fire that guy because he's going to run against me for sheriff was the incident that kicked off a series of investigations. And these investigations were and it's officer Christopher Collins. But I will say in following up on Judge Rovner's point in the appendix that you filed at page 68 is where this remark is occurs in the deposition. And then there's a follow up question. And do you recall the date this conversation took place? Answer? No. And then I don't know, because we only have a few pages of this, whether there's anything else, I guess, by that time, he'd been teaching at Waubonsie. Maybe there are other indirect ways of knowing, but it's it's odd that the district court would not have at least commented on such a direct statement. Well, and I think it's more than that. I think it's it's an error. It's a manifest error. Both the district court and the defendants in this case admit that we made a prima facie case because well, they take the district court assumes for the sake of discussion. I'm not sure she admits it. Your Honor, I would I would I would point out that this issue was a manifest error. And again, I think a key hinge of the mistake the district court made goes to that misreading of Carter. Carter says there are three distinct paths, three separate paths. You can find out that the purported justification had no basis. In fact, you could argue that they were insufficient to warrant discharge or and this is a crucial key or that they were not the real reason that both the district court and the defendant in their reply brief substitute the word or with the word and. And that's a mistake. I agree with you. That is a mistake. And so if you look at it as a three-pronged analysis, I think that leads us to the error the district court made. But that's an three distinct paths. All we need to do is show one out of three. That's correct. Here we have argued they were insufficient to warrant discharge. We have an expert that has testified to this. We've gone through that analysis further. I think that's a harder road for you, to be honest, because it does seem that he was told because of this new guidance from the attorney general and others that holding the position of police chief in Maple Park was inconsistent with his duties as sheriff, compensated or not. So if that was their opinion, then it's hard to see that that's retaliatory. Maybe they're right, maybe they're wrong, but retaliation is hard to see. Judge, I think that's an excellent point, but that opinion was something that came to after the fact. That rationalization was built throughout the litigation after the fact. That was not what he was told at the time. That analysis, and we went through exhaustive positions on this issue. What did they rely upon and when? Keep in mind, Judge, the issue is not about whether the attorney general had an advisory opinion. Those were theories that the defense built in the litigation phase. But why? I mean, even if that's the case, as I understand the record, it's sometime in July of 2007 that he goes on injury leave, and both the sheriff and the undersheriff tell him that this Maple Park employment is suspended until he comes back. And then as of November 6th, the undersheriff, undersheriff Zeman, orders him to cease that work. Well, first they didn't tell him it was suspended. They told him he couldn't be active. They give him limited duty restrictions. The undersheriff Zeman gave permission to do administrative work, office duties, because he was injured, but he was operating in administrative capacity. So there's a gray area there. It wasn't a clear cut suspension. And then later on, it came to, you must cease the activity. And subsequent to getting that order, he immediately transferred the powers to the officer in charge, Mr. Blanco. Interestingly, Now, on the due process claim, it seems that processes were available and that Yankee or, you know, perhaps his attorney may have erred in not preserving his ability to use those processes. What exactly did the sheriff do to block Yankee's access? It appears, it appears, and you'll help us out on this, but it appears that the sheriff simply held him to the procedural rules that applied to everyone else. Your Honor, what occurred is the sheriff used different timeframes and changed his mind about what occurred in different dates. At the outset, it's undisputed the merit commission rules shall employ, and the merit commission rules, unless the employee waives the requirement or elects arbitration. Sheriff Perez, in his termination letter, confirms that he had elected arbitration. That's the only way he can skip the merit commission process. I'm sorry, could you speak into the microphone? I know it's awfully nice of you to look at me, but. As you're answering, though, it's my understanding that whatever the sheriff may have said, that he didn't file a specific grievance about the termination. He may have filed grievances about other things, but without the predicate grievance, then there's nothing to arbitrate. It's not the issue of the grievance, it's the issue of whether the sheriff can immediately terminate. He has a right to a hearing, so the hearing, the due process, grants Deputy Sheriff Yankee at the time the opportunity. I understand, but then he's, then he decides I'm not going to go through this hearing process before the merit commission. I'm going to go through the grievance procedure, but he doesn't file a grievance about his termination. As both the record shows, the district court comes to the conclusion both Perez and Zeman were under the impression that Yankee intended to arbitrate. Well, but what's an impression worth? I mean, you have to file a grievance. Absolutely, Judge, but this comes back to the revisionist history. On the day Sheriff Perez wanted to terminate, he operated with the statement, the affirmative statement that a grievance had been filed. Then at a later date, he flipped on that and said, oh, there was no grievance. But if a grievance had been filed, the arbitration would, whatever Sheriff Perez's opinion had been, there would have been an arbitration procedure because there would have been a right to such a procedure. They don't crank it up when there's no grievance. I appreciate the court's point, and I think it's an excellent point. But the issue here is, did Perez have the right to terminate instantly or not? So Perez, under the guise of an arbitration request having been made, the grievance having been filed, said, I terminate it immediately. And that is what cut off the right of deputies. So you're making essentially an estoppel argument, and I just am not sure that the facts here support that. Well, I appreciate that there is a gray area in the facts because the facts change as the story evolves. On the day Perez terminates, he writes in his termination letter that he had intended to arbitrate. Right. He's under the impression that Mr. Yankee's going to arbitrate. And so he says, well, you know, there's no point in this October 24th hearing. Well, and again, he changes his position as the events move on. The struggle in looking at this- But Mr. Yankee never says, no, I want my hearing. Mr. Yankee, through his attorney in the union, and here's where the other- He never says he wants his October 20, whatever it was, 27th hearing. Well, then there became a different question to form over substance of the grievance as filed or delivered. I mean, that was a whole separate inquiry. So they sought his right to be heard on numerous occasions. So if you want to save a minute for rebuttal, you could do that or- Certainly do. All right. Thank you. Mr. Krentz. Good morning. I'm here on behalf of the defendants. My big question for you, Mr. Krentz, is why is it not error to grant summary judgment on the termination claim given the statement, the direct evidence from under Sheriff Seaman? Because this case made no sense from the beginning, Judge. That's not the question. Juries may think people are very silly. The only way a jury could reasonably find that Steve Yankee was fired for political reasons is to ignore what Steve Yankee did, what Steve Yankee didn't do, and what Steve Yankee said. I'm not sure about that because Mr. Yankee also has this party at his house in August 2007, in which he tells everyone there he's planning to run for sheriff in 2010. In the beginning of this case, we took his deposition, and on page 17 of his deposition, he's asked, had you announced to anyone that you intended to run for office in any election that was going to take place after October 28, 2008? The answer is no. He never told anybody. It isn't, did you tell anyone other than Steve Seaman? Did you tell anyone other than the Maple Park Police people? The question is, did you tell anybody? And he says no. I don't know why that matters, though, if the sheriff fires him on the belief that he's going to be a political rival. Because the sheriff didn't have that belief, Your Honor. And the reason is... That's not what Mr. Seaman said. Objectively, he had never done anything in his life to make himself a viable candidate. You are asking us to make a credibility determination. No, I'm not. And I think Judge Rovner has a question. I do, and thank you. I'm sorry, but in addition to the district court ignoring what certainly looks, Mr. Krentz, like direct evidence of wrongful intent from Mr. Seaman's deposition, you seem to have ignored that in the briefing. So my question would be, why haven't you waived any claim relating to this evidence at this point? I admit that Steve Seaman said that in his deposition. That's the only evidence that they had. What more do we need? Well, you need to take it in context. A jury might not believe it. A jury might say, for the reasons that you're describing, that in fact, you know, it was not a Mount Healthy kind of, but for the superseding reasons, etc. But a jury might say, well, here's the sheriff out of his own mouth. I mean, it's admissible. He's a party opponent. There's no hearsay problem admitting that it's political. You need to look at what was going on in context. The whole theory of this complaint is that Perez comes up with these trumped-up fictitious investigations so that he can fire Perez, or he can fire Yankee, who claims he's going to run against him someday. But all of that was in reaction, at least the way they alleged it, was in reaction to this statement. But Yankee sends an email in the midst of this supposed fake fictitious investigations where he tells Seaman that he intends to retire in 2013. Now, when Seaman intends to retire in 2013, or I'm sorry, Yankee intends to retire in 2013, that is really important because that shows that at that point, March 19, 2008, he had no subjective intent to run for office. I know you argue that, but a lot of people retire, and then they do something else after they retire. Retire doesn't mean you go home and sit in front of your TV for the rest of your life. Maybe you run for public office. Maybe you take up a hobby that you've had before. Maybe you conduct public service work through your church or something. You do a lot of things. So I fail to see the link between an intent to retire from the sheriff's department and intent never to, you know, hold a different kind of position, perhaps that of sheriff. Some people retire when they're 55. They're young. He told Seaman he was leaving the sheriff's office. As a person who's a deputy, I guess, but I don't know. I mean, again, I can see this is perhaps a jury argument, but is it this slam-dunk evidence that it's impossible he wanted to run? He's got to prove, but for this supposed political retaliation, he wouldn't have been terminated. Right. He had never done anything as a candidate. There's no reason to believe as of the time he was fired, that he was ever going to run. The election was a couple of years off, right? Pardon? The relevant election was a couple of years off. The election would have been held in November 2010, and then you become the sheriff in December 2010. Right, so he's fired October 28, 2008, so it's two years in the future. Right. I mean, I realize the presidential race begins like 30 years before the year in question, but other races don't. But again, in his complaint, he alleges he didn't realize he had been politically retaliated against until 2012, three and a half years after he's fired, a year and a half after this election, election that he now claims he was going to run for, which he never did, which whatever Yankee did or didn't do, based on his admission that he didn't find out about this until 2012, he can't blame whatever he did or didn't do on Sheriff Perez. He's saying he didn't know about it until 2012. But he's within the statute of limitations. You're not arguing that he filed this case too late, are you? No, I'm not arguing that at this point. Right. I'm just saying three and a half years after he's fired, then he comes up with a theory that he was retaliated against politically. So whatever happened between 2008 and 2012, he can't claim affected his ability to run for sheriff or do anything else because he says he didn't know about it. Well, his complaint is that he was fired, you know, and wished that he wasn't fired. But it's based upon the fact that he says Perez came up with these fictitious complaints. But if the whole point of the complaint is to say I shouldn't have been fired, I would still happily be working as a deputy in the Kane County Sheriff's Office, had you not overreacted to maybe some thought of running for sheriff or the like. But if you go through what the OPS people did, it was a very thorough investigation. He can't work at Maple Park as the part-time police officer based upon the Public Employee Disability Act. He lives in Maple Park, doesn't he? No, he lives in Aurora. So this is not something that you do as a citizen Absolutely correct. Okay. He hit these... I didn't understand him to be contesting that aspect of things. I didn't... And that's the end of the case because he's ordered not to be the chief of police at Maple Park and the OPS has overwhelming evidence that he did that. And under the general orders of Kane County, if you're dishonest in an official public or department dealing, that's a basis for termination. Even their expert admits that. Was he paid for that? For? The work he did after he was... No, he was not paid afterwards. But again, under the Public Disability Act, that doesn't matter. You can't work with or without pay if you're a public employee. There's no exception in the rule. In other words, you can't volunteer to be anything? That doesn't sound very... Here's what it says. Public Employee Disability Act is 5 ALCS 345, subparagraph 1D. During the period of disability, which is during the time you're on leave of work because you're hurt, the injured person shall not be employed in any other manner with or without monetary compensation. That's what the statute says. Is being a volunteer being employed? No, you could volunteer at your church or the Boy Scouts or whatever, but you in the old days when I was doing this sort of thing, you can't hold two, this is Indiana, two lucrative offices. And the weird thing about that is as a lawyer, I couldn't be a notary public when you get 10 cents or something when you notarize something. So if I'm a state senator, they had to make a special rule that state senators could actually do a notary something or other. It's weird, but that's the definition. Well, in this case, I learned that some sheriffs will allow their deputies to work in law enforcement departments, others won't. It kind of depends. As far as working with some community and as opposed to being a paid... This was a paid job, which is why he wanted to do it. That's why Yankee wanted to the chief of police. He wanted the money. Okay. Maybe he wouldn't run for sheriff for that reason too. Maybe he would have, but there was no indication that he was going to. And there's no indication that the findings in the OPS investigation that Sheriff Perez didn't believe them. And there's no indication that those findings were a lie. The thing is though, District Judge, you even mentioned this, and in your own brief, it's very superficial. You sort of implication, well, he wasn't going to run for something political. When this is a statement that, like it or not, it's pretty succinct and it's with the under sheriff that's testifying. It's not somebody that overheard him in the bathroom. Who says that three and a half years after Yankee was fired, after Zeeman was fired, and he's a disgruntled employee at the time. They have nobody else. Did he get fired too? Zeeman was fired, right? Okay, Zeeman. Before he gave the deposition. But do we know, I mean, I can't tell from this deposition excerpt at what time he says that Sheriff Perez made that statement. I mean, the depositions, when the conversation. Right. From a time when Yankee is still at the department. It had to be in 2007 or 8 because that's the only time there were these, quote, fictitious investigations. If it occurred, and I'm not conceding that's a true statement at all. Well, you don't have to. That's not the point Thank you. Thank you very much, Mr. Krantz. Anything further, Mr. Delaney? Yes. Wait a minute for Judge Rovner. Quick point of clarification. I had reserved five minutes. Do I have one minute or five? You have all the time you reserved. Thank you. First, I want to address a couple of the points. I'm stunned that we're here arguing context. This is an appellate argument. It's based upon the of material fact. This is a struggle they can't not get around. So what we've heard in this oral argument from defense are things that are not even in the record, not even in the record, which is completely improper. And this court should disregard what this court can't do is to take judicial notice. And the defense will agree with me that currently today sitting as sheriff of Kane County is a gentleman named Mr. Kramer, who prior to that was a retired deputy he ran for sheriff after he left the office and he was elected. So this viability theory that they presented here hold no merit whatsoever. The record is replete with information that Mr. Yankee was a political action guy. He was involved with the Republican Party. He was a precinct captain. He was walking the beat. He was serving as chief of Maple Park. He was very active in the political engagement and he testified as well as other witnesses testified about this barbecue where he had announced and he had gotten supporters. He had raised money. So what are we to make of this deposition excerpt that Mr. Krentz pointed to? Here's the issue. He was planning. He hadn't announced. The deposition question is, have you announced? So announced kind of with a capital A announced? Absolutely. In the formal requirement of putting yourself out there for public office, you have to realize this is a very contentious police department. The sheriff himself had a wrongful term of a retaliatory discharge case. Sheriff Perez, because he supported the winner of the prior election, the loser prior election. So if you put yourself out there with a formal announcement, you're picking a team and that impacts your day to day operations as a deputy sheriff in Kane County. And Sheriff Perez will tell you that because he had his own retaliatory discharge case before he made it into office because he picked the wrong sheriff at the prior election. So this issue of announcement is absolutely a capital A. He hadn't announced because he had an exploratory committee. He had a campaign manager. He was talking to his buddies, seeing who's on his team. Will you go with me if I run? This was this was a process in the making. And regardless, it doesn't matter because the evidence is conflicting on this issue. So there is no slam dunk for the defense here. They ignore the conflicting issues and they spin this argument of context. And that's improper, especially at this point. We're in a de novo review here. Going back to the issue of the termination, the question before the court is, are there genuine issues of material fact? There absolutely are. If we go back to the it was not the real reason we have played from the get go that this was a pretext. They built a mountain of paperwork to hire to fire a man, distinguished award winning 23 year serving deputy sheriff who has been nothing but a testament to the community. And suddenly, in a span of one fell swoop, all of these investigations, which might you didn't find any material issues. This audit of time resulted in an award of extra time to my apparently he had aired by taking away his own comp time. He got more money at the conclusion of this audit. Their argument is that the form wasn't filled out, right? These are the things they're calling not absolute honesty. These are all pretextual. The investigator did not go to the police department in Maple Park and say to the police who worked there, who's the chief? They never asked that question. They did not go to officer charge Blanco and say, when did you take over? They never even asked that question. What they did was they went surfing for hearsay within hearsay within hearsay. They found an article written in a paper that a reporter called my client and referred to him as chief. Well, this court can take notice that when you leave office, your title often goes with you. If President Bush walked in here today, we would refer to him as president and the community knew him as chief for all the years he served as the chief of Maple Park. That a newspaper story referred to him in the third person has no bearing on whether or not he was acting as the police chief. The inquiry goes to the police department, but they ignored that. They trumped up and the conflicting evidence here is overwhelming, your honor. If you look into the pleadings, the district court relies on this testimony that says, oh, we thought we saw him talking to someone, but we're not sure. And then if you look at the OPS investigation report, it's direct conflict. It says it's unclear. So the conflicting evidence here is overwhelming. The standard before us is, is there a genuine issue of material fact? Is this right for the jury or not? There was never a slam dunk here. This is a misreading. Thank you very much. Um, thanks to both council. We'll take the case under advisement.